JOHNSON, Appellant, vs. LEWIS, Respondent.

*December 11, 1912—January 7, 1913.*

*Animals: Killing of sheep by dogs of different owners: Liability: Special verdict: Submitting new questions in absence of counsel.*

1. Under sec. 1620, Stats., if dogs of different owners unite in killing, wounding, or worrying sheep, each owner is liable for all the damage so done.
2. Where, in an action for the killing, wounding, and worrying of sheep there was evidence tending to show that the damage was done by a small dog belonging to defendant and a larger one owned by another person, and the jury, coming in with an incomplete special verdict, informed the court that they were having difficulty with the question of separating the damage done by each dog, they should have been told that that question was not before them; and it was error to submit to them a new set of questions in order to make it easier for them to separate such damage, whereby they were led and encouraged to find nonliability of defendant upon a ground inconsistent with the rule above stated.
3. Where a jury returns into court after having retired to consider a special verdict, it is error for the court to submit a new and materially different verdict in the absence of counsel.

APPEAL from a judgment of the circuit court for Richland county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

*L. H. Bancroft,* for the appellant.

For the respondent there was a brief by *Burnham & Black,* and oral argument by *C. D. Black.*

TIMLIN, J.    The action is brought against the defendant as owner and keeper of a dog to recover damages for sheep and lambs of the plaintiff chased, bit, worried, and killed by said dog.    Evidence sufficient to take the case to the jury was presented tending to show that two dogs, one a hound and the other a small cur weighing about twenty pounds, were harbored and kept at the farm house and premises of the defendant and that these two dogs did the mischief complained of. This farm house belonged to and was occupied by the defendant, a bachelor, and also by defendant's brother-in-law, Alleback, who by agreement with defendant was a cropper of defendant's farm on shares and had the management thereof. Defendant worked on the farm and kept up the fences.    There was evidence tending to show that the hound belonged to Alleback and the other dog to the defendant.

The cause was submitted on a special verdict, the first question calling for the amount of plaintiff's damages incurred by reason of the killing and wounding of some sheep and lambs and the worrying of other sheep by the dogs on the night in question.    The second and third questions were as follows: "(2) Did the two dogs kept on the defendant's farm kill, wound, and worry the sheep as stated in the first question ? (3) Did the defendant keep and harbor the hound dog upon his said farm ?"    The instructions were very meager and no explanation given to the jury of the rule of law announced in *Nelson v. Nugent,* 106 Wis. 477, 82 N. W. 287.    The jury retired at 6 o'clock p. m. and returned into court at 10 o'clock p. m. with the second question answered "No."    Neither counsel was present.    The following colloquy took place be-

tween the court and the jury: "By the Court. Do you mean by that answer that neither one of the dogs killed the plaintiff's sheep? Foreman. It seemed to be the general opinion that they did. Court. Do you mean by that answer that they did not kill all the sheep? Foreman. Yes; we could not separate the two dogs." The trial court then declined to receive the verdict and announced that he had written out a new set of questions that might be somewhat easier for the jury, and submitted the same with instructions that when they had answered these questions they would be permitted to separate and return to court next morning. With some further exhortation to agree on account of the costs to the county which might otherwise be incurred, the jury retired with the new verdict, which was thereafter returned into court as follows:

"(1) Did the two dogs that were kept upon defendant's farm, or either of them, kill, wound, or worry the plaintiff's sheep? A. Yes.

"(2) If you have answered the first question 'Yes,' answer this question: Did both of them do so or only one? A. One.

"(3) If you have answered the last question by writing only one, state now which one? A. The hound.

"(4) If you answered the first question 'Yes,' state now what was the amount of the injury in dollars so done to the plaintiff's sheep. A. $151.25.

"(5) Did the defendant keep and harbor the hound dog on his farm? A. No."

The verdict as last submitted and returned is consistent with the theory that, although both dogs may have been engaged in the chase of the sheep and lambs, the hound dog, by reason of superior strength or speed, was the dog which killed, wounded, or worried the sheep. This verdict was drawn up and submitted in the absence of counsel. There was no opportunity to object to any question thereof, or to propose other questions, or to request instructions with reference thereto.

The colloquy with the jury informed the court that the former were having difficulty with the question of separating the damage done by each dog. The jury should have been told that this question was not before them for consideration. This second verdict was written for the purpose of making a new set of questions under which it might be easier to separate the damage done by each dog. It fails to find whether the smaller dog took part with the hound in the chase of the sheep, but does find that only the hound killed, wounded, and worried the sheep. So the form of the verdict indicates. This should not have been done and the appellant was prejudiced thereby, because the jury were led and encouraged to find nonliability of the defendant upon that ground, inconsistent with the rule of law announced in *Nelson v. Nugent,* 106 Wis. 477, 82 N. W. 287. If the small dog joined in the chase with the hound and participated throughout to the best of his ability, his owner would be liable notwithstanding the hound outstripped him in pursuit, reached the quarry first, and inflicted the more deadly or distressing wounds. This important phase of the case was ignored.

It was also error for the circuit court to draw up and submit this new verdict in the absence of counsel and without an opportunity for counsel to be heard thereon or to object or except thereto. *Du Cate v. Brighton,* 133 Wis. 628, 114 N. W. 103; *Oborn v. State,* 143 Wis. 249, 126 N. W. 737. Here the prejudice to appellant is apparent, because he was deprived thereby of his right to propose questions for the new verdict, to make requests for instructions and to be heard in argument thereon, as well as his right to take exceptions to the questions submitted.

*By the Court.*—Judgment reversed, and the cause remanded for a new trial.